**No. 25-1695**

_____

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE SEVENTH CIRCUIT

_____


Soma G. Priddle,

Petitioner,

Vs.

United States Department of Labor and Administrative Review
Board,

Respondents,

United Airlines, Inc.,

Intervening Respondent.

_____

On Petition for Review from an Order of the

Department of Labor's Administrative Review Board

No. 2023-0037

_____

**Petitioner / Appellant's Reply Brief**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………iii

INTRODUCTION ………………………………………………………1

STATEMENT OF THE ISSUES ………………………………………5

ARGUMENT …………………………………………………………5

CONCLUSION ………………………………………………………14

CERTIFICATE OF COMPLIANCE ………………………………15

CERTIFICATE OF SERVICE ………………………………………15

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** Page(s)

*Curtis v. Loether,*
 415 U.S. 189, 193, 94 S., Ct. 1005, 39 L. Ed. 2d 260 (1974)…12

*Jones v. United States Dept. of Labor,*
 556 Fed. Appx. 535 (2014)…………………………………………5

*Johns v. Whitaker,*
 2024 U.S. Dist. LEXIS 178165; 2024 W.L. 4363568
 E. Dist. Missouri (2024)…………………………………………3

*Loper Bright Enters. v. Raimondo,*
 45 F.4th 359 (2022)…………………………………………………5

*Parsons v. Bedford,*
 28 U.S. 433,7L.Ed. 732, 3 Peters 433 (1830)………………………12

*SEC v. Jarkesy,*
 603 U.S. 109 (2024)…………………………………………9,11,12,13


**Statutes:** Page(s)

49 U.S.C. §42121…………………………………………………1,5,9,11

28 U.S.C. §1332………………………………………………………6

5 U.S.C. § 706………………………………………………………706

112 P.L. 153; 126 stat. 1159………………………………………3

**Rules and Regulations**:

F.R.C.P. 5(d)(2)(A)..............................................................7

F.R.C.P. 5(d)(4)..................................................................7

29 C.F.R. §1979.110...........................................................1

**PETITIONER'S REPLY TO THE DEPARTMENT OF LABOR'S ADMINISTRATIVE REVIEW BOARD RESPONSE**

Now comes Plaintiff-Appellant, attorney appearing *pro se*, and states as follows:

**INTRODUCTION**

This case arises under the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR 21"), which was signed into law on April 5, 2000. See 49 U.S.C. §42121. The Act includes a whistleblower protection provision, with a Department of Labor complaint procedure. Implementing regulations are found at 29 C.F.R. Part 1979, published at 68 Fed. Reg. 14,100 (March 21, 2003).

The AIR21 whistleblower protection procedures include provisions for a Complainant to appeal to the Dist. Ct. of Appeals 49 U.S.C. §42121(b)(4)(a) which provide airline employees the protections of federal Article III courts should they wish to challenge the findings of the National Transportation Board ("NTSB") Administrative Law Judge ("ALJ") and Administrative Review Board ("ARB").

Congress passed the AIR21 legislation and included specific whistleblower protections which (a) identified a specific group of protected persons – airline employees – and (b) created a specific set of remedies for those persons, including the appeal rights to Article III courts.

In her initial interview at United Airlines in 1989, Petitioner was asked what she would do if she saw an unsafe condition, reported it through appropriate channels, and was brushed aside with the hazard continuing. She answered honestly by explaining such an occurrence in her previous employment, and her resolute refusal to violate Federal Aviation Regulations (FAR). United hired her immediately. Petitioner did not change her attitude about safety and regulatory compliance during her three decades of flying United airplanes. The industry changed; economic pressures to meet short term performance goals intensified, and operational pressures – inherently conflicting with safety adherence – intensified.

Congress took notice of the pressures on airline crews and passed the Wendell H. Ford Aviation Investment and Reform Act in 2000, recognizing that airline employees with direct knowledge of

safety problems were in a tough situation when pressured by large corporations in a field with zero lateral mobility[1] and needed specific protections. Accordingly they enacted the Whistleblower Protection Program creating a specific set of rights and remedies to protect employees of scheduled airlines.[2] Congress further defined specific rights of pilots with the passage of the Pilot's Bill of Rights (P.L. 112-153 on August 3, 2012 with specific rights defined in relation to government enforcement actions – with subsequent revisions and enhancements. In the case of *Johns v. Whitaker,* 2024 U.S. Dist. LEXIS 178165; 2024 W.L. 4363568 E. Dist. Missouri (2024), the court concluded that the "full independent review" that Congress mandated district courts complete in an appeal under the Pilots Bill of Rights supersedes the typical differential review of an agency's decision under the Administrative Procedure Act (APA), 5 U.S.C. §551 et.seq. This case is being cited for illustrative purposes

---

[1] All airlines are operated on a strict seniority basis with no exceptions. After decades of building seniority in order to qualify for the opportunity to learn a new airplane and receive an FAA type rating, a pilot has no meaningful opportunity for lateral movement., If he were to find employment with another carrier he would start over again at the bottom of their list, and take another few decades to reach his former salary – if possible at all. Thus airline managers have unfettered power over individual pilots.

[2] Congress could have created rights applicable to all pilots, as they later did in the Pilot's Bill of Rights. Or they could have created generic rights for any aviation safety reporter. Instead they defined a specific set of rights and remedies for a narrowly defined class of persons: employees of airlines with remedies and protections designed to protect those parties from abusive conduct by the much larger airlines – from both contractual breaches and tortious activity by the airlines.

demonstrating Congresses recognition of the importance of pilot's individual rights separate and distinct from other aspects of regulating aviation safety.

Much has changed in the constitutional framework governing the relationship between individual U.S. citizens, their government, and the authority and the powers of the administrative agencies between the passage of the AIR 21 whistleblower protections in 2000 and the time of Complainant's filing her Petition in 2026. Notably, the constitutional limitations upon the delineated authority of the administrative agency tribunals have been sharply defined through a series of U.S. Supreme Court rulings which confirm the boundary lines of delegated adjudicatory authority. That delegated adjudicatory authority stops at the point where it infringes upon private rights, which require the full protections of Article III independent judiciary, full due process rights including Federal Rules of Civil Procedure and Federal Rules of Evidence, Fifth Amendment and Seventh Amendment protections – and are inextricably intertwined.

## STATEMENT OF THE ISSUES

1. Whether Petitioner's petition for review should be dismissed because it is untimely;

2. Whether the scope of the Appeal to the Court of Appeals provided by 49 U.S.C. §42121(b)(4)(A) includes full constitutional protections including a trial before a neutral Article III judge with Due Process including Federal Rules of Civil Procedure; Federal Rules of Evidence; and a jury trial.

## ARGUMENT

### Petitioner's petition for review should not be dismissed as untimely

Jurisdiction for this appeal is appropriate under 49 USCS § 42121 (b)(4)(A) and 5 U.S.C. § 706. *See: Jones v. United States Dept. of Labor*, 556 Fed. Appx. 535 (2014).

This case is an appeal from the Administrative Review Board ("ARB") Decision in Case No. 2023-0037 confirming the Administrative Law Judge ("ALJ") Decision and Order issued in Case

No 2020-AIR-00013 which was issued by the ARB on February 21, 2025.

On April 14, 2025, Plaintiff Appellant appeared at the Clerk of the 7th Circuit Court of Appeals Office at the Dirksen Federal Building, to file her Notice of Appeal via hand delivery. There was some confusion with the staff at the Clerk's office unsure of her status because she was a *pro se* litigant, but separately an attorney licensed in Wisconsin who was not then admitted to practice in this court. After checking with a supervisor the clerk advised her that he could not accept the Petition for Review but that she would be required to mail it to the Clerk's office. *See:* Declaration of Soma Priddle, dated February 18, 2026. Plaintiff then mailed her Petition for Review via certified mail postmarked April 17, 2025 from Winnetka, Illinois (Doc 1-1,p.18). For unknown reasons[3], the Notice of Appeal was not received by the Clerk's Office and docketed until April 23, 2025.

Plaintiff Appellant also claimed jurisdiction pursuant to 28 U.S.C. §1332 diversity jurisdiction. Plaintiff is a resident of Wisconsin

---

[3] This could possibly be associated with the State of Illinois holiday on April 18, 2025

and United Airlines is headquartered in Chicago, Illinois. (Doc. #29, p.3)

The Federal Respondents, in their Brief for the Federal Respondents ("Fed. Brief") (Doc. #37,p.3) argue that her petition for review should be dismissed as untimely.

Dismissal would not be appropriate because:

(1) The Clerk erred in refusing to accept the physical copy of the notice she presented on April 14, 2025. Federal Rules of Civil Procedure 5(d)(2)(A) states "A paper not filed electronically is filed by delivering it: to the clerk" and F.R.C.P. 5(d)(4): Acceptance by the clerk. The clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice."

(2) Petitioner acted in good faith both in her attempt to present her Notice personally on April 14, 2025 and by mailing a certified copy on April 17, 2025 – five days prior to the deadline; *See: Declaration of Soma G. Priddle*

(3) Jurisdiction is still valid under diversity 28 U.S.C. §1332 diversity jurisdiction, which was not challenged by Respondents.

(4) This Honorable court, after reviewing original submitted Agency brief 1 on Nov 4, 2025 (Doc # 21) issued a brief deficiency letter (Doc #22) on November 4, 2025.  After conferring with the Clerk's office Petitioner corrected the named deficiencies in a new brief and appendix (Doc. # 23). However, the court still found the tendered brief procedurally deficient and ordered her to resubmit by November 18, 2025 a new brief. (Doc #24).  She re-submitted her appellant brief on November 16, 2025 (Doc #25) which was accepted by this court. After carefully scrutinizing the deficiencies of her inaugural briefs and jurisdictional statements before this court, and accepting her final versions, it would be inappropriate to reject them now.

(5) On May 27, 2025 Federal Respondents filed a Motion to extend time to file the Certified List  (Doc. #8) and on December 9, 2025 the Federal Respondents filed a Motion to extend the time to file their agency brief #2 (Doc. # 31).  They failed to object to the timing of Petitioner's Notice in either of those briefs. (Intervenor United also failed to raise a timing issue or claim prejudice to their interests) Neither did they attempt to meet and confer with Petitioner on the matter. They offer no evidence of prejudice to their interest by the

U.S. mail arriving one day after the 60 day deadline. Therefore their opportunity to object should be deemed waived.

## Scope of the Appeal to the Court of Appeals provided by 49 U.S.C. §42121(b)(4)(A) includes full constitutional protections including a trial before a neutral Article III judge with Due Process including Federal Rules of Civil Procedure; Federal Rules of Evidence; and a jury Trial

It is clear that Congress intended to provide whistleblower protections for airline employees, specific remedies, and an opportunity to litigate those rights – first in the administrative tribunal and then in an Article III court. Petitioner argues in her appeal that the statutory provisions for the Article III appeal *must* be read to include all Article III court protections – as defined and clarified by the *Loper Bright Enters. v. Raimondo*, 45 F.4th 359 (2022) and *SEC v. Jarkesy*, 603 U.S. 109 (2024 decisions.

The Federal Defendants mischaracterize her argument as stating that she challenges the adjudicatory authority of the NTSB after voluntarily requesting that "the Secretary adjudicate her claims". (Brief for the Federal Defendants ("Fed Brief") (Doc. #37, p.2,

10 (That is not correct. She has consistently followed the AIR21 implementation procedures from DOL investigation through ALJ Tribunal, ARB review and now Ct. Court of Appeals appeal. The parties disagree about the *scope* of the Article III Appellate Review provided in the statute.

AIR 21 provides for the Dept. of Labor to conduct an initial investigation with limited tools and fact-gathering resources, but it is not binding. Some technical matters may be capable of resolution at that level. The law requires that the parties at least try. Either party can appeal, and when they do so the process begins anew with the ALJ and a new pleading complaint. The ALJ tribunal does the best that it can with limited resources including: almost no subpoena authority; inability to deter blatant discovery violations with remedies for contempt; looser rules on hearsay and judicial involvement[4], and of course judicial independence – as the ALJ and NTSB board are all employees of an agency whose budget is affected by the lobbying interests of the large airlines. An additional category of quasi-

---

[4] Judges can and do question witnesses directly in trial. Theoretically, if both judge and witness possess specific technical knowledge, these could lead to judicial efficiency. The trade-off is the loss of neutrality of an Article III judge

technical disputes may be resolved at this level. For those differences which cannot be resolved at the agency level, AIR21 provides for appeal to the federal courts. Petitioner argues that this review must include a new trial with full constitutional protections because they involve private rights, as delineated in *Jarkesy*.

The federal defendants argue that aviation safety is a public right, (Fed. Brief 23-27) and therefore the private right guarantees do not apply. They are incorrect in their analysis. While aviation safety in general may be a public right, with appropriate delegation of authority to the FAA and NTSB but the *Whistleblower protections of AIR 21 –* are not. This section pertains to individuals who happen to face particular pressures and the protection of their individual rights.

Petitioner is not 'seeking a re-do in federal court' (Fed. Brief, 2) she is seeking for the first time a fair trial before a neutral judge with full constitutional protection. She *is* arguing that the Ct. of Appeals review provided by the statute 49 U.S.C. §42121(3)(4)(A) "Review shall conform to chapter 7 of title 5, United States Code" requires reversal and a new trial.

The private right interests at stake for the individual pilot are not within the narrow realm of historical exception as 'public rights'. In the case of *SEC v. Jarkesy,* 603 U.S. 109; 144 S. Ct. 2117, the court explains the analysis of private rights: "By its text, the Seventh Amendment guarantees that in "[s]uits at common law … the right of trial by jury shall be preserved". In construing that language, we have noted that the right is not limited to the "common law forms of action recognized" when the Seventh Amendment was ratified. *Curtis v. Loether*, 415 U.S. 189, 193, 94 S., Ct. 1005, 39 L. Ed. 2d 260 (1974). As Justice Story explained, the framers used the term "common-law" in the Amendment "in contradistinction to equity and admiralty, and maritime jurisprudence" *Parsons v. Bedford,* 28 U.S. 433,3 Pet., at 4465, &. L. Ed. 732. The Amendment therefore "embraces all suits which are not of equity or admiralty jurisdiction , whatever may be the peculiar form which they may assume." *Id.* At 447, 28 U.S. 433, & L. Ed. 732"

Petitioner's claims against Respondent do not fall within the areas recognized as public rights. The remedies she seeks of financial damages, whether stemming from claims which would traditionally

sound in contract or tort, clearly fall outside of the narrow exceptions identified by the Framers – equity, admiralty, and maritime jurisprudence.

Congress intended to give airline employees access to the protections of the Federal Article III courts. As noted in the *Jarkesy* concurring opinion of Justices Gorsuch and Thomas, the Constitutional protections must be read as a whole.

Clearly in light of *Roper* and *Jarkesy*, the Supreme Court's clarification of how those individual rights are to be protected from administrative agency overreach shows that the AIR21 whistleblower protections include an opportunity for Petitioner to receive a new trial with Federal Rules of Evidence, Federal Rules of Civil Procedure, before a neutral Article III judge.

## CONCLUSION

Wherefore, Petitioner/Appellant respectfully requests that this
Honorable Court grant her a new trial under a neutral Article III
judge with full protections of Federal Rules of Civil Procedure,
Federal Rules of Evidence, Due Process, and a jury trial.

Respectfully submitted,                    February 26, 2026

*/s/Soma G. Priddle*
Soma G. Priddle, Esq.
Wisconsin Bar No. 1097831
17719 Lariat Ave.
Norwalk, WI 54648
(630) 747-8962
Somapriddle@yahoo.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 32(a)(7)(B) because it contains 2582 words, and is 14 pages in length. Excluding table of contents and table of authorities.

This brief also complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Bookman Old Style 14-point font.

*/s/Soma G. Priddle*

## CERTIFICATE OF SERVICE

I certify that on February 26, 2026, I filed a copy of this brief with the Clerk of Courts for the Seventh Circuit Court of Appeals through the Court's CM/ECF system, which will serve counsel for all parties.

*/s/ Soma G. Priddle*

<u>Summary of the Parties' Dispute</u>

<u>And ALJ Trial</u>

Captain Priddle first received her FAA Type Rating in the Boeing 757/767 in 1993 through the older, extremely rigourous Appendix H Training at United Airlines.[1] From 2000 through 2018 she flew Captain in the B767/757 fleet primarily in North America, South America, and Europe. She was a highly experienced senior Captain on the aging 767 fleet when she began noticing a pattern of serious maintenance and lack of safety oversight[2](Priddle was also an SMS Auditor, as well as an attorney). After the merger between United-Continental Airlines merger in 2010[3], scheduling changes increased planned utilization of the 767 aircraft, and maintenance problems developed resulting in in-flight emergencies. On one occasion she noticed a tremendous nose-wheel vibration on the

---

[1] The FAA has approved many shortened and reduced versions of training over the years, the most dramatic being the transition to the Advanced Qualification Program (AGP) which dramatically cuts required training time and materials – a major cost-saving for the airlines. Much of the material about the airplane is no longer required knowledge, but merely available for reference.

[2] All airlines are required to have a Safety Management System (SMS) These systems which are structurally similar to Sarbanes-Oxley reporting requirements for financial reports and ISO 9000- reporting for manufacturing (all based on COSO standards) *See: https://www.ecfr.gov/current/title-14/chapter-I/subchapter-A/part-5/subpart-A/section-5.7*

[3] United and Continental merged on October 1, 2010. The financial plans included expected savings from increased utilization of the B767 and B757 fleets with the new route structure. The plans failed to account for increased maintenance with greater utilization of the older aircraft. *See: https://www.sec.gov/Archives/edgar/data/100517/000119312510222185/dex991.htm*

757. After an emergency landing in ANC, the crew and investigators found the wheel itself had cracked on takeoff and huge pieces actually fell off the airplane, shredding pieces of the nosewheel tire in the process.[4] On another occasion there was an uncommanded asymmetrical deployment of the Leading Edge Slat system at 26,000 feet – which is 6,000 feet above the Boeing limit for airworthiness of the aircraft.[5] After an emergency return to Houston the maintenance logs showed that 9 of 10 of the Leading Edge sensors were failed or out of limits, the wing was not straight enough to pass inspection without substantial repair – and that there had been two previous failures – which had not been logged in the maintenance records. The flight safety investigation again found Priddle and her crew behaved admirably. UAL falsified the safety reports to claim the airplane had no mechanical issues. (It took two ARB appeals to force United to produce those safety reports which

[44] To place some perspective on the severity of this incident, a 17" strip of titanium caused the crash of the Concorde on July 25, 2000  On Priddle's ORD-ANC flight the FAA inspector alerted the ORD tower to check the runway immediately upon seeing the damage. United tried to cover up the incident by failing to make the mandated Service Difficulty Report (SDR) to the FAA and Boeing and downplaying the incident as merely a 'tire change' while failing to document the broken wheel. Priddle's SMS report was not properly reviewed. *See: https://www.faa.gov/lessons_learned/transport_airplane/accidents/F-BTSC*

[5] Every aircraft is certified with manufacturer's Limits on operation of the airplane – the manufacturer has determined through engineering tests that the airplane is not airworthy at that speed or configuration. Exceeding a manufacturer's Limit requires a major maintenance inspection and recertification prior to resumption of flight – if further flight is possible.

contradicted the actual maintenance records).  United management retaliated against Priddle and threatened her.  On another occasion the aircraft elevator – the flight control surface which directs the pitch of the aircraft (nose-up or nose-down) vibrated and split in half. After Priddle and her crew managed to get the airplane on the ground in one piece, United attempted to cover-up the incident by falsifying records, and hiding the flight data recorder. Petitioner's witnesses testified how United attempted to smuggle the cockpit flight data recorder out of Canada by passing it through the window of the outbound aircraft after it had been sealed for Customs (and thus stay off of the load manifest).  Emails produced after the prolonged discovery fight included a message from the head of the Safety department about "where to put the Flight Data Recorder: [instead of the official location] and how to hide it in his office.  In response to Priddle's safety reporting and inquiries United managers began a systematic pattern of harassment, threats, retaliation and attempts to discredit her.  This included non-standard grading of subjective 'personality' items during training on the B777 in 2018, despite her passing all objective criteria. Based solely upon the subjective statements of certain managers, United

managers requested a medical examination known as a "fitness-for-duty" exam. The Fed. Brief is incorrect in stating that "Priddle and United had a dispute about whether that examination could be conducted by a psychiatrist." (Fed. Brief, p.8) Priddle agreed to undergo a Fitness-For-Duty examination, appointed a Medical Doctor as her medical representative[6]- per the terms of her employment contract – and he contacted United's medical representative, a Physician's Assistant who was United's Medical Director.  When asked about policy, procedure, and what medical standards United used for their pilot FFDs United's medical representative refused to communicate with Priddle's medical representative and would not cooperate in any manner to arrange an FFD . Despite Priddle's request to her Chief Pilot to get United's medical people to speak to her representative, there was no further contact.  Later United misstated the facts by claiming Priddle refused to attend an FFD.  During a prolonged discovery battle United thwarted judicial orders to produce documents by claiming they did not exist, or were buried amongst over 170,000 pages of

---

[6] Dr. John Culpepper (Col – U.S. Army – ret) is a Senior FAA Aviation Medical Examiner – HIMS qualified – which is the FAA qualification for assessing pilots with potential psychiatric or alcohol/substance issues

unrelated extraneous other materials or could not be found.

Petitioner produced experts who testified that the so-called 'training records' produced by United were clearly forged and specifically identified the FAA mandated training records which United did *not* produce. Petitioner's maintenance expert witness, currently an FAA Designated Engineering Representative worked at Boeing for many years as part of the design team who designed and certified the Boeing 767, before he began working for the FAA as a senior aeronautical engineering inspector. He testified that United Airlines had falsified the logbook entries, flown the B767 in violation of mandated Airworthiness Directives, and that Priddle and her crew were the only crew who ever safely landed a B767 with a separated elevator. United's expert witness, a psychiatrist, testified that Petitioner must be suffering from various mental illnesses including Obsessive Compulsive Disorder, Cognitive decline, neurological disorders early onset Alzheimer's amongst others, despite never having met her, based solely upon the secondhand statements of the two instructors shared with him[7]. He also testified that he had

---

[7] One instructor had completed two years of Junior college about 40 years earlier; another instructor had no college credits at all. At the same time she was completing her B777 type rating, Priddle also completed an

done dozens of medical examinations for United – usually alcohol related – and that he did not follow any medical standards[8] but used his own methods.

---

LLM in International Law at the John Marshall Law School in Chicago, Illinois with excellent GPA. Nonetheless the managers and their psychiatrist insisted she must be in severe cognitive decline.,

[8] Dr. Henry testified that he did not follow American Medical Association, American Psychiatric Association, American Academy of Psychiatry and Law (AAPL), Federal Aviation Administration Medical Standards for Pilots, or any other published medical standards in doing his evaluations for United.

Soma G. Priddle Vs. United States Department of Labor and Administrative Review Board

United Airlines, Inc., Intervening Respondent.

On Petition for Review from an Order of the

Department of Labor's Administrative Review Board

No. 2023-0037

**Declaration of Soma G. Priddle**

I, Soma G. Priddle, under penalty of perjury, do solemnly swear as follows:

I received notification, via email, of the ARB Decision in the matter of Priddle vs. United Airlines on the morning of February 22, 2025. I prepared a Notice of Petition and read the website of the Clerk of the Court for the Seventh Circuit Court of Appeals. I had not filed anything with the Seventh Circuit Court of Appeals or any other federal Court of Appeals, but I had filed many documents with the Federal Dist. Ct. of the Northern District of Illinois, and I was familiar with their procedures, including time stamping and acceptance of documents by the Clerk's office.

When I arrived at the Clerk's Office for the Seventh Circuit Court of Appeals I explained my situation, including my first time appearance before this honorable court and my *pro se* status. I brought multiple copies, hoping to time stamp each, submit one to the court and mail time-stamped copies to the opposing counsel. Based upon my reading at that time, and my experience in the Northern Dist. Of Illinois I thought that was a reasonable plan, coupled with asking for instruction from the Clerk's Office.

After speaking to his superior in the back office, and verifying at least once that I was the *pro se* Petitioner, and an attorney – but not admitted before the 7th Circuit – he came back and told me that the Clerk could not accept the physical copies but that I would have to mail them, preferably via Certified

Mail. I do not recall the exact words, but there was a discussion of electronic filing. I had attempted to log in to file electronically but my status with PACER and login.gov system would not allow me to file a case before the 7th Circuit Court of Appeals. (This was later resolved after I was admitted by the Court.) I asked if they could time-stamp the documents for me, and he advised they could not do so until they were received via the U.S. Mail.

When I left the Clerk's Office I discovered it was too late in the day to mail the documents from the U.S. Post Office across the street. Previous commitments on the 15th and 16th prevented me from getting to the Post Office until the morning of April 17th, 2025. I mailed the Notice and Petition to the 7th Circuit Court of Appeals from the Post Office in Winnetka, Illinois, and also mailed copies to opposing counsel. Although I am a Wisconsin resident for many years, I lived in Illinois for much of my life, a good portion of it in Winnetka, and worked in Chicago for over thirty years. I went to the John Marhsall Law School, across the street from the Dirksen Federal Building for my J.D. and L.L.M. degrees and frequently work at offices in the downtown area of Chicago. Based upon many years of experience, I had every confidence that a letter mailed on the morning of April 17th from Winnetka, Illinois would arrive at the 7th Circuit's office within one or two days – well ahead of the deadline five days later.

I also believed that the 'mailbox rule' applied to my filing and that I was well within the deadline for sending my Petition and Notice of Appeal.

I have made every effort to comply with the Rules of the 7th Circuit Court of Appeals. I read the instructions and Guide on the website, attended a two-day CLE on practicing before the 7th Circuit with very helpful information from the members of the Clerk's Office. I have been in close contact with the technical support for the Electronic Filing System as I learn the bugs of electronic filing before this court – which is a very different set of procedures, software, and technical interface than the Office of Administrative Law Judges (OALJ) system of the National Transportation Safety Board ()NTSB) or the Administrative Review Board (ARB) procedures at the National Transportation Safety Board (NTSB).

Although my initial Agency Brief #1 was amongst the 15% of briefs found to be deficient, I worked with the Clerk's Office diligently and promptly to resolve the deficiencies, corrected my errors, learned from my mistakes (including one which was not listed anywhere in the instructions) and both recognize and appreciate the Court's discretion in allowing me to correct my

inadvertent errors, as detailed in the Court's Order (Doc. #24)   I read the criticisms carefully, took appropriate corrective action, and believed that I had properly filed my briefs.

It was only after reading the Brief of the Federal Defendants, (Doc. #37,p.1) that I realized there was a discrepancy between the date listed on the Petition – the date I attempted to physically file the documents – and the date I actually delivered them to the U.S. Post Office.  This error was completely inadvertent.

Respectfully submitted,
February 18, 2026


*Soma G. Priddle*

Capt. Soma G. Priddle, Esq.
17719 Lariat Avenue
Norwalk, Wisconsin 54648
630-747-8962
somapriddle@yahoo.com
WI Bar No. 1097831
Petitioner/Appellant, *pro se*